United States District Court
Eastern District of New York
-------------------------------------------------------------------X   1:17-cv-04551
Josh Davis, individually and on behalf of
all others similarly situated,

                     Plaintiff,

      - against -                                  Complaint

PepsiCo, Inc., Naked Juice Co., Naked Juice
Co., Inc. and Naked Juice Co. of Glendora, Inc.,

                     Defendants.
-----------------------------------------------------------------X

      Josh Davis ("plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

      1.      PepsiCo, Inc. ("defendant Pepsi"), Naked Juice Co. ("defendant NJC"), Naked Juice Co., Inc. ("defendant NJCI") and Naked Juice Co. of Glendora, Inc. ("defendant NJCGI") (defendants NJC, NJCI and NJCGI referred to collectively as "Naked Juice defendants," together with defendant Pepsi, "defendants"), manufacture and sell juice products under the "Naked Juice" brand name.

      2.      Within the Naked Juice brand, there are seven (7) distinct product lines which include juice blends, smoothies, almond milks and coconut waters.

      3.      The relevant product line to this action is "Naked Pressed" (the "Product Line"), sold in brick-and-mortar stores by third-parties.

      4.      The Product Line is defendants' entrant into the premium juice market, and its purportedly characterizing feature is that it is cold pressed.

      5.      The Product Line currently consists of nine fruit and vegetable juice blends

in 12 ounce bottles (the "Products"), with names including Hearty Greens, Bright Greens, Cool Pineapple, Lively Carrot and Bold Beet.

6. The Products and labels differ to the extent of the fruits and vegetables used, though the representations are substantially similar or identical with respect to material information which applies across the Product Line.

7. Multiple factors have contributed to a demand for premium juices, including (1) consumer awareness of the harmful effects of high added sugar and artificial ingredients in carbonated soft drinks and similar products, causing retailers to replace these categories with higher margin, healthier alternatives, (2) consumer preference for products manufactured with the fewest production steps possible, (3) demand for products with ingredients limited to fruits and vegetables, without added sugar or artificial flavors, in contrast to conventional juice products which can be heavily processed and contain added sugar, additives and concentrates.

8. Many premium juice products are made through being cold pressed, which has a material bearing on the price and acceptance of the product, because it indicates to consumers that the products are fresh, not processed, its composition has not been modified by subsequent processing or treatment steps and that more nutrients are retained in the final product than if a different production method was applied. To consumers, "cold pressed" refers to the process by which juice is made and describes the attributes and composition of a juice made in this way.

9. After being cold pressed, the products may be sold to consumers or undergo an additional treatment or processing step before being sold.

10. Cold pressing is the first main production step used by defendants to

manufacture the Products. This entails shredding of fruits and/or vegetables into a pulp, using a steel rotating disc. The shredded fruits and vegetables are then loaded into a large hopper feeding tube, falling into a filter bag. Multiple tons of hydraulic pressure are applied, causing juice and water from the produce to drip into a collection tray. The liquid is then bottled and labeled.

11. Defendants' next step involves placing the bottles into a cylindrical vessel and subjecting them to pressure at levels up to 87,000 pounds per square inch ("psi").

12. This high pressure causes (1) the temperature of the contents of the bottles to increase, (2) structural changes to cell membranes, (3) inactivation of enzyme systems, which control metabolic reactions within the products, extending their shelf life, (4) denaturing of proteins, (5) a reduction in the most resistant microorganism of public health concern which was present in the cold pressed juice by at least 100,000-fold and (6) a reduction in microorganisms which are not of public health concern.

13. The high pressure reduces and degrades enzymatic, biological and cellular activity and diminishes overall nutrient content, to an extent that is material.

14. A food product's name is (1) intended to refer to the final product and not the product which exists at an intermediate stage of manufacturing and (2) may include descriptive, modifying or qualifying terms that are truthful and not misleading.

15. Avoiding deception when labeling and describing a product is especially necessary where packaging does not clearly distinguish one product variation from another.

16. For example, if products typically stored and displayed in metal containers are packed in transparent bottles and refrigerated, consumers would incorrectly believe it was fresh or less processed, so its label designation should include the word "canned."

17.     Defendants misrepresent the Products by identifying, labeling and describing them as cold pressed and through the brand or trade name, Naked Pressed, which emphasizes their claims of "cold pressed" by including "PRESSED" in the product name, on the principal display panel and the supplemental information panel.

18.     Defendants are not required to disclose that its Products are made through being cold pressed. However, given this voluntary disclosure, the statements it does make must be truthful and not misleading.

19.     These representations are "half-truths" because they exclusively tout the more desirable, cold pressed aspect of the products and do not disclose, qualify or modify said representations by indicating that after being cold pressed, the Products undergo high pressure processing.

20.     The high pressure processing renders the composition of the final product distinct from the intermediate, cold pressed product, as described, *supra*.

21.     Defendants' representations are not uniform to identical or similar products manufactured in this manner (cold pressing followed by high pressure processing), which renders their labeling misleading and deceptive.

22.     For example, identical or similar products of Bolthouse Farms and Starbucks may be, and are, identified and described as "High Pressure Processed," since (1) this expresses in clear terms what distinguishes them from other juice products, (2) describes them in their final consumable form and (3) does not exclusively or disproportionately tout the more desirable, cold pressed aspect of the products relative to the less favored aspect that the products undergo high pressure processing after being cold pressed.

**Starbucks Evolution**



**Bolthouse Farms**



**Naked Pressed**



23. The Products cost no less than $4.99, excluding tax, a premium compared to other products manufactured in multiple, similar production steps.

## Jurisdiction and Venue

24. Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

25. Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

26. This Court has personal jurisdiction over defendants because each conducts and transacts business, contracts to supply and supplies goods within New York.

27. Venue is proper because plaintiff and many class members reside in this District and defendants have been doing business in this District and in New York.

28. A substantial part of events/omissions giving rise to the claims occurred in this District.

## Parties

29. Plaintiff is a citizen of Queens County, New York.

30. All defendants are corporations, formed under the laws of the following states: PepsiCo, Inc. (NC), Naked Juice Co. (PA), Naked Juice Co., Inc. (PA) and Naked Juice Co. of Glendora, Inc. (CA).

31. The Naked Juice defendants are wholly-owned by defendant Pepsi.

32. In late 2016, plaintiff purchased a Naked Pressed Product for no less than $4.99, excluding tax, at a store within this District.

33. Plaintiff paid a premium for the Naked Pressed Product because prior to purchase, he saw and relied upon the representations described herein.

34. Plaintiff purchased the Naked Pressed Product because he intended to

personally consume a product which possessed the attributes and features described herein and opted against buying less expensive juice products which were not so represented.

## Class Allegations

35. Defendants' representations uniformly impacted consumers.

36. The class is all consumers in all states who purchased any of the Products during the period within the applicable statute of limitations.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

38. The class is so numerous that joinder of all members, even if permitted, is impracticable, as plaintiff believes there are hundreds of thousands of class members.

39. Common questions of law or fact predominate and include whether (i) defendants' representations were likely to deceive reasonable consumers and (ii) plaintiff and class members are entitled to damages.

40. Plaintiff is a class member with claims typical of other members, in that every member was susceptible to the same representations and purchased the Products and is thereby entitled to relief under the same causes of action as other class members.

41. Plaintiff is an adequate class representative because his interests do not conflict with members he seeks to represent and he has an interest in vindicating his rights.

42. Plaintiff's counsel is competent and experienced in complex class action litigation of consumer protection issues and they intend to vigorously prosecute this action and adequately and fairly protect class members' interests.

43. No inquiry into individual conduct is necessary since the focus is only on defendants' practices and the class is definable and ascertainable. Individual actions (i) risk

inconsistent adjudications, (ii) would be repetitive and burdensome and (iii) are impractical to justify as the individual claims are modest.

44.     Plaintiff seeks class-wide injunctive relief because the practices continue.

45.     The injunctive class should be maintained as a class action because it meets the same criteria of the non-injunctive class.

## Violation of New York General Business Law § 349

46.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

47.     Defendants' acts or practices are not unique to the parties and have a broader impact on the public.

48.     Defendants' labeling of the Products as cold pressed along with its brand or trade name, Naked Pressed, is deceptive because it provides no further disclosure or qualifying material indicating that the cold pressed juice was an intermediate product, which was then subjected to high pressure processing.

49.     Defendants had a duty to disclose that the products were subjected to an additional production step after being cold pressed because (1) at the time of purchase, defendants had special or superior knowledge of such facts which were unavailable to plaintiff and class members and (2) by voluntarily stating that the products were cold pressed, defendants were required to not provide incomplete or partial representations.

50.     The representations and omissions were material facts which plaintiff and class members relied on, paying more for the Products than they would have and not receiving all that they bargained for.

51.     As a result, plaintiff and class members are entitled to damages.

Violation of New York General Business Law § 350

52. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

53. Defendants' advertising, labeling, packaging and representations of the Products are not unique to the parties and have a broader impact on the public.

54. Defendants' representations are misleading because it offers voluntary, favorable information about the Products but withholds information that reasonable consumers are likely to find less favorable.

55. These representations and omissions are material, since the additional manufacturing intervention modifies the composition of the intermediate juice product.

56. Defendants' false advertising was relied upon by plaintiff and class members, who paid a premium for the Products greater than the amount they otherwise would have paid and did not receive all that they bargained, which was a juice product made through being cold pressed that was not subjected to additional production steps.

57. As a result, plaintiff and class members are entitled to damages.

Fraudulent Misrepresentation

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Defendants knowingly represented the Products as cold pressed through its labels and brand name, Naked Pressed, despite subjecting the Products to a second production step after being cold pressed.

60. Defendants were not required to disclose the production methods used, but given their voluntary disclosures, it was misleading to provide half the truth, since the

representations fail to state additional or qualifying matter.

61. The failure to disclose that the Products were subjected to an additional pressure processing step and exclusively touting the cold pressed aspect was calculated to induce a false belief that the Products were substantively and/or materially different than they actually were and of higher quality, fresh and not modified after being cold pressed.

62. Defendants' fraudulent misrepresentations were reasonably relied upon by plaintiff and class members, who paid a premium for the Products greater than what they would have paid and did not receive all they bargained for, thereby suffering damages.

### Fraud

63. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. Defendants' representations of the products as cold pressed, through its labels, descriptions and brand name, Naked Pressed, but omitting that its Products were subsequently subjected to high pressure processing, is a misleading half-truth.

65. Once defendants made voluntary disclosures regarding the cold pressed production method used in manufacturing the Products, they had a duty (1) to say enough to prevent their representations from being misleading and/or (2) to say the whole truth and not conceal or omit material facts which materially qualify its representations.

66. Defendants intended to induce consumer reliance on these representations because they voluntarily offered truthful comments about only those aspects consumers favored while omitting aspects consumers typically find less favorable.

67. At the time plaintiff and class members relied on the representations and purchased the Products, the fact that the Products underwent high pressure processing after

being cold pressed was known and/or accessible only to defendants, who possessed superior knowledge and access to these facts.

68. The failure to disclose this was material because the additional production step modifies and alters the Products' composition in the manner described, *supra*, and qualifies the representations that the Products are cold pressed.

69. Defendants' actions give rise to and support a strong inference of fraudulent intent, which entitle plaintiff and class members to damages.

## Implied Warranty of Merchantability

70. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. Defendants manufacture, distribute and sell juice, and warranted to plaintiff and class members that the Products were cold pressed without further informing them that subsequent production steps were applied to the Products.

72. The Products do not conform to the affirmations of fact and promises on the Products and the accompanying literature, wholly due to defendants' actions.

73. As a result of breaching the implied warranty of merchantability, plaintiff and class members were damaged in the amount paid for the Products.

## Unjust Enrichment

74. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75. Defendants obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action and certifying plaintiff as class representative;

2. Entering preliminary and permanent injunctive relief and directing defendants to correct their practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law claims and GBL §§ 349, 350;

4. Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: August 2, 2017

Respectfully submitted,

Levin-Epstein & Associates, P.C.

By:    /s Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Sheehan & Associates, P.C.

By:    /s Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

1:17-cv-04551
United States District Court
Eastern District of New York

Josh Davis, individually on behalf of himself and all others similarly situated,

        Plaintiff,

  - against -

PepsiCo, Inc., Naked Juice Co., Naked Juice Co., Inc. and Naked Juice Co. of Glendora, Inc.,

        Defendants.

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 2, 2017
       New York, New York

                                 /s Joshua Levin-Epstein
                                 Joshua Levin-Epstein